Victor L. George, State Bar No. 110504
Meylin P. Alfaro, State Bar No. 315177
LAW OFFICES OF VICTOR L. GEORGE
20355 Hawthorne Blvd., First Floor
Torrance, California 90503
Telephone:      (310) 698-0990
Facsimile:      (310) 698-0995
E-mail:              vgeorge@vgeorgelaw.com
                     malfaro@vgeorgelaw.com

Attorneys for Plaintiffs,
ANAIT STEPANYAN,  KIRAKOS KESABLYAN, and KADZHIK KESABLYAN,
individuals and heirs of Decedent VAHRAM KESABLYAN; and ANAIT
STEPANYAN as Successor in Interest to VAHRAM KESABLYAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ANAIT STEPANYAN, KIRAKOS KESABLYAN, and KADZHIK KESABLYAN, individuals and heirs of Decedent VAHRAM KESABLYAN; and ANAIT STEPANYAN as Successor in Interest to VAHRAM KESABLYAN, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA; F.B.I. AGENT HANNAH MARIE MONROE; F.B.I. AGENT BROMLEY RENAE; TWENTY UNKNOWN F.B.I. AGENTS; and DOES 1-100, inclusive, <br><br> Defendants. | CASE NO. 2:20-cv-01774-CBM-MAA <br><br> Hon. Consuelo B. Marshall <br> United States District Judge <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS** <br><br> Dept.: 8B, in First Street Courthouse <br> Time: 10:00 a.m. <br> Date: November 10, 2020 |

# **TABLE OF CONTENTS**

I.      STATEMENT OF FACTS ........................................................................... 1

II.     PROCEDURAL HISTORY ........................................................................ 2

III.    THE COURT HAS LIMITED ANALYSIS ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WHERE AS HERE, PLAINTIFFS HAV EMET FEDERAL RULE PLEADING REQUIREMENTS .......................................................... 4

IV.     PLAINTIFFS HAVE SET FORTH FACTUAL ALLEGATIONS IN THE FAC SUFFICIENT TO STATE BIVENS CLAIMS IN CAUSES OF ACTION SIX, SEVEN, EIGHT, AND NINE ................................................................................... 5

        A.     Factual Allegations from Paragraphs 26 through 37 of the FAC are Sufficient to Support the *Bivens* Claims in this Complaint .................................................. 5

        B.     There is No Qualified Immunity for Defendant Monroe, Defendant Bromley, and the 20 Unknown Agents ...................................................................... 10

        C.     Plaintiffs are Within the State Statute of Limitations to Make a *Bivens* Claim as this Federal Complaint Was Filed Within the Six-Month Period After the Denial by Defendants and Court's Look to Analogous Provisions in State Law as a Source of a Federal Limitations Period ........................................................... 11

        D.     Plaintiffs Can Make a *Bivens* Claim as Survivors Under Code of Civil Procedure § 377.11 and § 377.30 .......................................................................... 14

V.      PURSUANT TO THE FTCA PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS AGAINST DEFENDANT THE UNITED STATES OF AMERICA ........................................ 14

        A.     Complaints Under the FTCA are to be Liberally Construed in Favor of the Plaintiff ..................................................................................... 15

        B.     Plaintiffs FAC Alleges Sufficient Facts to State Causes of Action One, Two, Three, Four, and Five Under the FTCA .......................................................... 16

        C.     There is California Law Wherein Plaintiffs Can Assert the Negligence Theories of Supervisory, Training, and Hiring Negligence .......................................... 17

i

VI.   LEAVE TO AMEND SHOULD BE GRANTED IN THE ALTERNATIVE ................**18**

VII.   CONCLUSION .......................................................................................**18**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236 ................................................13

*Arena v. Graybar Elec. Co., Inc.* (5th Cir. 2012) 669 F3d 214.......................................18

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, (1999) 403 U. S. 388 .........................................................................................................................5

*Burnett v. Grattan* (1984) 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36...................12

*Chuman v. Wright* (9th Cir. 1996) 76 F. 3d 292 .............................................................11

*Community House, Inc. v. City of Boise, Idaho* (9th Cir. 2010) 623 F. 3d 945 .....1, 10, 16

*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983 ...............................12

*Doe v. U.S. Dep't of Justice* (D.C.Cir.1985) 753 F.2d 1092 ..........................................12

*Dowell v. County of Contra Costa* (1985) 173 Cal.App.3d 896 .....................................13

*Glorietta Foods, Inc. v. City of San Jose* (1983) 147 Cal.App.3d 835 ...........................14

*Hydrick v. Hunter* (9th Cir. 2012)  669F. 3d 937.............................................................11

*James v. Rowland* (9th Cir. 2010) 606 F. 3d 937 ...........................................................11

*Katelaris v. County of Orange* (2001) 92 Cal.App.4th 1211 .........................................14

*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237 .....................12

*Loumiet v. U.S.* (D.D.C. 2013) 968 F.Supp.2d 142.........................................................11

*Mason v. County of Delaware Sheriff's Dept.* (2nd Cir. 1993)  150 F.R.D. 27 ..............15

*Massa v. Southern Calif. Rapid Transit Dist.* (1996) 43 Cal.App.4th 1217 ..................13

*Mayle v. Felix* (2005) 545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582 .....................15

*McDonald v. Salazar* (D.D.C. 2011) 831 F.Supp.2d 313 ..............................................12

*Moreland v. Las Vegas Metro. Police Dep't* (9th Cir. 1998) 159 F.3d 365....................14

*Owens v. Okure* (1989) 488 U.S. 235, 249, 109 S.Ct. 573, 102 L.Ed.2d 594 ................12

*Quintana-Martinez v. Rodriguez-Velez* (D.P.R. 2007) 553 F.Supp.2d 40......................11

*Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 522-526 ...............................14

*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903................................................................13

*Schmidt v. Southern Calif. Rapid Transit Dist.* (1993) 14 Cal.App. 4th 23 ..................13

**PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**

*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201................................................13

*Skaff v. Meridien North America Beverly Hills, LLC* (9th Cir. 2007) 506 F.3d 832 .......15

*Topchian v. JPMorgan Chase Bank, N.A.* (8th Cir. 2014) 760 F.3d 843 ......................15

*U.S. v. Iroquois Apartments, Inc* (2nd Cir. 1957)  21 F.R.D. 151..................................15

*Williams v. Hill* (D.C.Cir.1996) 74 F.3d 1339 ................................................12

*Wooten v. McDonald Transit Associates, Inc*. (5th Cir. 2015) 788 F.3d 490 ................15

*Wright v. North Carolina* (4th Cir. 2015) 787 F.3d 256 ..................................15

**<u>STATUTES</u>**

28 U.S.C.  § 2401 (b)...............................................................................2, 13

28 USC § 1653 .......................................................................................18

Gov.C. § 912.4.......................................................................................12

Gov.C. § 950.2.......................................................................................12

California Government Code § 910 ...............................................................2

CCP § 335.1 ....................................................................................13, 14

Code § 910...........................................................................................13

Fed. Rules Civ.Proc., rule 8 (a) ..................................................................15

Gov.C. § 810.........................................................................................12

Gov.C. § 911.2.......................................................................................13

Gov.C. § 913.........................................................................................13

Gov.C. § 945.6(a)(1) ...............................................................................13

Gov.C. §§ 945.4.....................................................................................12

**<u>OTHER AUTHORITIES</u>**

§ 62:36.Construction of complaint—Dismissal for failure to state claim, 27 Fed. Proc.,
    L. Ed. § 62:36 ..................................................................................5

D.Motions to Dismiss (Rule 12(b)), Rutter Group Prac. Guide Fed. Civ. Pro. Before
    Trial Ch. 9-D....................................................................................5

Federal Procedure, Lawyer's Ed. § 62.33 .......................................................15

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF FACTS

Under no circumstances was the killing of Vahram Kesablyan by members of the FBI on January 8, 2018 objectively reasonable. This killing was a violation of Vahram Kesablyan's clearly established federal rights under the Fourth Amendment to be free from the use of unreasonable force against him. At all times, FBI Agent Monroe, FBI Agent Bromley, and the Twenty Unknown FBI Agents had a duty to protect Vahram Kesablyan, an innocent bystander, during their search and seizure operation but instead, Agent Monroe, Agent Bromley, and the Twenty Unknown FBI Agents shot and killed Vahram Kesablyan for no justifiable reason. See *Community House, Inc. v. City of Boise, Idaho* (9th Cir. 2010) 623 F. 3d 945, 964.

This case arises from the excessive use of force used by the Federal Bureau of Investigation. Decedent, who was 55 years old, was sitting in his car outside of the residence at 10325 Horse Haven Street, Sun Valley, California when he was fatally shot by law enforcement officers executing an arrest warrant against Plaintiff (and Decedent's son) Kirakos Kesablyan. Decedent's death was caused by the City of Los Angeles and the United States, through the conduct of their respective law enforcement officers.

As Defendants United States of America and FBI Agent Monroe, FBI Agent Renae, and Twenty Unknown FBI Agents participated in or supported the arrest warrant search being conducted on January 8, 2018, they caused the wrongful death of Decedent Vahram Kesablyan. At approximately 5:40 a.m. on January 8, 2018, Defendants went to Plaintiff Kirakos Kesablyan's residence at 10325 Horse Haven Street, Sun Valley, California to execute an arrest warrant for Kirakos. Decedent Vahram was sitting in his parked car outside of the residence located at 10325 Horse Haven Street, Sun Valley, California, at which his son (Kirakos) and four grandchildren (ages 6, 5, 3, and 6 months) reside. Decedent was there to pick up and drive his grandchildren to school. Decedent did not pose any threat to Defendants at the time that he was shot. Decedent

Vahram complied with all orders from Defendants, and Defendants used excessive force in shooting and killing Vahram. Defendants shot Decedent with the intent to harm Decedent and acted with willful disregard of Decedent's rights. The shooting of Vahram was a violation of his interest in freedom from intentional, unlawful, harmful or offensive unconsented contacts with his person.

The United States violated the United States Constitution, the California Constitution, and the laws of the State of California when, through the conduct of its law enforcement officers, its use of excessive force resulted in the wrongful death of Decedent Vahram Kesablyan. The United States had constitutional and state law obligations to refrain from use of excessive force while carrying out an arrest warrant against Decedent's son Plaintiff Kirakos Kesablyan. Instead of fulfilling these obligations, the United States and its federal FBI agents, acted with callous disregard towards Decedent Vahram Kesablyan, using extreme excessive force in shooting and killing him.

## II. __PROCEDURAL HISTORY__

Plaintiffs filed an initial complaint in Los Angeles Superior Court on January 8, 2019. Plaintiffs filed against the County of Los Angeles, Los Angeles Police Department, Los Angeles County Sheriff's Department and Does 1-100, inclusive. (Alfaro Decl. ¶3) On November 27, 2018, Plaintiffs each presented a Claim for Damages to Defendant USA, by and through the Federal Bureau of Investigations, pursuant to, and in substantial compliance with, California Government Code § 910, *et seq*. and 28 U.S.C. § 2401 (b) for damages sustained as a result of the incident alleged herein. (Alfaro Decl. ¶4) On January 18, 2019, the Federal Bureau of Investigation sent a letter to Plaintiffs indicating that the Government Claims submitted by Plaintiffs were deficient and further action would need to be taken. (Alfaro Decl. ¶5). Plaintiffs submitted the required information to complete the claims on February 25, 2019. (Alfaro Decl. ¶6). A denial and/or rejection from the Federal Bureau of Investigations was sent to Plaintiffs on October 9, 2019. (Alfaro Decl. ¶7).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**

On June 6, 2019, Plaintiffs filed Doe amendments for the Federal Bureau of Investigation, F.B.I. Agent Hannah Marie Monroe and F.B.I. Agent Bromley Renae. (Alfaro Decl. ¶8). Proof of service was filed on June 18, 2019. These amendments were necessary because the newly sought Defendants were involved in the wrongful death that gives rise to this lawsuit. (Alfaro Decl. ¶9). These Defendants included the Federal Bureau of Investigation, F.B.I. Agent Hannah Monroe and F.B.I. Agent Renae Bromley, both of whom supervised the FBI Agents who were involved in and at the scene where the arrest warrant search was being conducted on January 8, 2018, the date that gave rise to this lawsuit. (Alfaro Decl. ¶10).

Plaintiffs filed their State Complaint Court Case No. 19STCV01385 on January 8, 2019, and as of that time Plaintiffs were unaware that the submitted Federal Government Claim was deficient. (Alfaro Decl. ¶11). After complying with the requested information for the Government Claims from the Federal Government, the claims were completed on February 25, 2019. Thus, Defendants were unable to name Defendant United States of America on the State Complaint Court Case No. 19STCV01385. (Alfaro Decl. ¶12). After serving the Doe entities, F.B.I, F.B.I. Agent Monroe and F.B.I. Agent Bromley on June 13, 2019 and filing Proofs of Service of Summons, it was discovered that Government entities must be named in the operative complaint and cannot be Doed into a lawsuit and that the proper Defendant to name was the United States of America, and not the F.B.I. (Alfaro Decl. ¶13)

Before Plaintiffs could move to be given leave to file an amended complaint to the State Complaint Court Case No. 19STCV01385 in Los Angeles Superior Court, erroneously named Defendant Federal Bureau of Investigation moved to remove this lawsuit to the United States District Court for the Central District of California. (Alfaro Decl. ¶14). This action was removed to the District Court on September 12, 2019 and given Case No.: CV 19-7918 CAS (PLAx). The Federal Bureau of Investigation then moved to dismiss this action on September 25, 2019, asserting that Plaintiffs had improperly named the Federal Bureau of Investigation as a Defendant. (Alfaro Decl.

PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE
UNITED STATES OF AMERICA'S MOTION TO DISMISS

¶15). On October 11, 2019, counsel for erroneously named Defendant Federal Bureau of Investigation and Plaintiffs' counsel entered into a stipulation dismissing Defendant Federal Bureau of Investigation only. On November 18, 2019, this Court issued an Order of Remand as to Case No.: CV 19-7918 CAS (PLAx). (Alfaro Decl. ¶16)

On September 15, 2020, the Los Angeles Superior Court Case No. 19STCV01385 held a CMC wherein the Defendant Federal Bureau of Investigation was dismissed in that state court case. Plaintiff were ordered to serve Defendants, FBI Agent Monroe and FBI Agent Bromley with the State Court Complaint and the CMC was continued to January 5, 2021. (Alfaro Decl. ¶17)

On February 24, 2020, Plaintiffs refiled in Federal Court against Defendants United States of America and FBI Agent Monroe, FBI Agent Bromley, and Twenty Unknown FBI Agents and were given Court Case No. 2:20-cv-01774-CBMMAA, this case. (Alfaro Decl. ¶18)

## III.   THE COURT HAS LIMITED ANALYSIS ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WHERE AS HERE, PLAINTIFFS HAV EMET FEDERAL RULE PLEADING REQUIREMENTS

On a motion to dismiss for failure to state a claim, the court's analysis is limited to a determination of the sufficiency of the complaint under the federal rule providing pleading requirements, and if the liberal requirements of that rule, requiring only a short and plain statement of the claim showing that the pleader is entitled to relief, are met, the motion should be denied. To survive a motion to dismiss, the pleading need not correctly categorize legal theories giving rise to the claims, and the court is under a duty to examine the pleadings to determine if the allegations provide for relief under any theory. As long as the defendant has been given fair notice of the allegations and the grounds upon which they are based, and the court can glean an actionable claim from the complaint, the complaint is generally sufficient. A well-pleaded complaint may proceed even if actual proof of the facts alleged is improbable. § 62:36.Construction of complaint—Dismissal for failure to state claim, 27 Fed. Proc., L. Ed. § 62:36.

Motions attacking subject matter jurisdiction solely on the basis of the allegations in the complaint (together with documents attached to the complaint, judicially noticed facts and any undisputed facts evidenced in the record) must be viewed in the light most favorable to plaintiff. D.Motions to Dismiss (Rule 12(b)), Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-D. Since key jurisdictional facts are not being disputed, the court should review the subject pleading under the more liberal standard as a facial attack.

## IV.   PLAINTIFFS HAVE SET FORTH FACTUAL ALLEGATIONS IN THE FAC SUFFICIENT TO STATE BIVENS CLAIMS IN CAUSES OF ACTION SIX, SEVEN, EIGHT, AND NINE

Under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, (1999) 403 U. S. 388, 396-397, a federal cause of action is stated where federal agents, acting under color of federal authority,  violate a person's Fourth Amendment rights  and said federal agents may be held personally liable for a cause of action under the Fourth Amendment for damages recoverable upon proof of injuries resulting from agents' violation of that Amendment.

### A. Factual Allegations from Paragraphs 26 through 37 of the FAC are Sufficient to Support the *Bivens* Claims in this Complaint

Set forth below are the factual allegations from paragraphs 26 through 37 of the FAC wherein sufficient facts have been alleged to state *Biven* claims in Causes of Action Six, Seven, Eight, and Nine. Those facts are as follows:

"In the early morning hours of January 8, 2018, DECEDENT VAHRAM was shot and killed by DEFENDANTS as they executed an arrest warrant for KIRAKOS, son of DECEDENT VAHRAM, and went to his residence at 10325 Horse Haven Street, Sun Valley, CA at approximately 5:40 a.m. " (FAC ¶ 26)

"At that time, Decedent VAHRAM, who was 55 years old, was sitting in his parked car outside of the residence located at 10325 Horse Haven Street, Sun Valley, CA at which his son and four grandchildren (ages 6, 5, 3, and 6 months) reside.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**

Decedent VAHRAM's purpose for being there was to pick up and drive his grand kids to school." (FAC ¶ 27)

"At all times Defendants MONROE, BROMLEY and 20 UNKNOWN AGENTS Does 1-100 failed to act as reasonable peace officers under the circumstances. At the time of the shooting MONROE and BROMLEY were two of the FBI Special Agents in charge of supervising 20 UNKNOWN AGENTS for the arrest of and serving the search warrant on 34 year-old KIRAKOS for the alleged nonviolent crime of impersonation of a federal officer." (FAC ¶ 28)

"Plaintiffs are informed and believe and at all times allege that MONROE and BROMLEY and the 20 UNKNOWN AGENTS they were supervising to arrest KIRAKOS and serve KIRAKOS with a search warrant knew exactly what the 34 year-old male KIRAKOS looked like. MONROE and BROMLEY and the 20 UNKNOWN AGENTS they was supervising during this arrest and service of the search warrant for the 34 year-old KIRAKOS used deadly force against an innocent bystander, VAHRAM, a 55 year-old grandfather who was sitting in his pick up truck at that time. Under no circumstances could the elderly VAHRAM be mistaken for the young man, KIRAKOS, to whom MONROE and BROMLEY and the 20 UNKNOWN AGENTS were serving a warrant." (FAC ¶ 29)

"MONROE, BROMLEY, and the 20 UNKNOWN AGENTS intentionally and /or negligently shot and killed VAHRAM without justification or provocation while VAHRAM quietly sat in the driver seat of his pick up waiting to take his grandchildren to school that morning. MONROE, BROMLEY, and/or the 20 UNKNOWN AGENTS they were supervising were able to see VAHRAM's head and upper torso through the pick up window. At no time did the Defendant peace officers determine that VAHRAM was any type of threat whatsoever. Under no circumstances was VAHRAM ever attempting to flee from these officers." (FAC ¶ 30)

"At no time did VAHRAM present an immediate risk of death or great bodily harm to any FBI Agent or any other person at the scene of the shooting. MONROE,

PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE
UNITED STATES OF AMERICA'S MOTION TO DISMISS

BROMLEY, and the 20 UNKNOWN AGENTS  they were supervising, intentionally and /or negligently shot and killed VAHRAM through the front windshield of his pick up without ever seeing any form of aggression or threatening gesture by VAHRAM. Under no circumstances was this shooting an act of self defense or in the defense of others by said Defendants and Does 1-100. Under these circumstances, said Defendants and Does 1 through 100 could not reasonably believe that the use of deadly force was lawful because they were under no threat of violence from VAHRAM at any time." (FAC ¶ 31)

"At no time did said Defendants and DOES 1 through 100 ever give any warning to VAHRAM but instead intentionally and/or negligently shot him through the front windshield of his pick up and killed him without warning. At all times Defendants and Does 1 through 100 knew that such a shooting was illegal and a violation of VAHRAM's Fourth Amendment Rights against excessive force. Instead, said Defendants and DOES 1 through 100 acted with deliberate indifference  to the rights of VAHRAM to be free from excessive, deadly force under these circumstances. DEFENDANTS and DOES 1 through 100, at no time had reasonable cause to believe that Decedent VAHRAM was either armed or dangerous." (FAC ¶ 32)

"At the time of the shooting on January 8, 2018, Decedent VAHRAM did not pose any threat to DEFENDANTS and DOES 1-100  or anyone else, at the time that he was shot.  Decedent VAHRAM complied with all orders from the DEFENDANTS and DOES 1-100.  DEFENDANTS and DOES 1-100 used excessive force in shooting and killing Decedent VAHRAM." (FAC ¶ 33)

"KIRAKOS was present at the scene of the shooting when Decedent VAHRAM was shot and KIRAKOS and VAHRAM's four grandchildren further witnessed Decedent VAHRAM still alive and bleeding from Defendants' gunshots, which ultimately killed VAHRAM. Said deadly shooting of Decedent VAHRAM by DEFENDANTS and DOES 1 through 100, above-referenced, also caused Decedent

1   VAHRAM to suffer pre-death severe physical injury, and severe mental, emotional and

2   physical distress, pain, and suffering." (FAC ¶ 34)

3       "DEFENDANTS USA and DOES 1 through 100 negligently and with deliberate

4   indifference to the rights of persons to whom its FBI Agents came in contact with poorly

5   trained, hired, supervised and retained its agents, officers, and/or employees including

6   but not limited to Defendant MONROE, BROMLEY, the 20 UNKNOWN AGENTS,

7   and DOES 1 through 100 that ultimately fired numerous rounds at or in the general

8   vicinity of Decedent VAHRAM.  Moreover, DEFENDANT 20 UNKNOWN AGENTS'

9   supervisors including but not limited to MONROE and BROMLEY and DOES 1

10  through 100 were negligent in their control and direction of the tactics utilized by the

11  peace officers at the scene." .(FAC ¶ 35)

12      "More importantly, DEFENDANTS and DOES 1 through 100 had and there

13  existed a custom, policy and practice, whether express or implied, oral or written, that

14  allowed all of the conduct outlined in this Complaint and that fostered an environment

15  deliberate indifference that allowed and permitted this shooting to occur, all creating

16  liability under the laws of the State of California, the Constitution of the State of

17  California, the laws of the United States, and the United States Constitution." (FAC ¶

18  36)

19      "Further, the DEFENDANTS and DOES 1 through 100, through their agents,

20  officers, and/or employees  shot Decedent VAHRAM with the intent to harm him, and

21  acted with willful disregard of Decedent VAHRAM's rights. Decedent VAHRAM  did

22  not consent to the shooting, but he was in fact shot and killed by DEFENDANTS. As a

23  result, DEFENDANTS committed the intentional tort of assault and battery against

24  Decedent VAHRAM by firing numerous bullets at Decedent VAHRAM.  The shooting

25  of Decedent VAHRAM was a violation of his interest in freedom from intentional,

26  unlawful, harmful or offensive unconsented contacts with his person." (FAC ¶ 37)

27      From the foregoing alleged facts, it is clear that plaintiffs have stated sufficient

28  facts to satisfy a Bivens claim against defendant Monroe, defendant Bromley, and

1  Defendants the Twenty Unknown Agents in  the Sixth, Seventh, Eighth, and Ninth

2  Causes of Action in the FAC.

3       Decedent Vahram was  a 55 year old grandpa, sitting in a parked pickup outside

4  of the residence that was to be searched,  early in the morning, waiting to take his

5  grandchildren to school. At all times, every single FBI agent at the scene  knew exactly

6  what the person they were serving with the warrant looked like and that person, Kirakos

7  Kesablyan, was a young man, 34 years old with young children, living in the home they

8  were about to search, and not an elderly looking grandpa sitting outside in a pickup

9  truck.  (FAC ¶ 27, 28, 29)

10       At all times Monroe and Bromley as FBI supervisors at the scene had a

11  responsibility to protect any and all innocent bystanders that might be present when this

12  operation began early in the morning on January 8, 2018. Instead of protecting an

13  innocent bystander,  Monroe, Bromley in the 20 Unknown Agents shot and killed

14  Vahram without any justification or provocation whatsoever while sitting quietly in the

15  driver seat of his pickup waiting to take his grandchildren to school that morning. (FAC

16  ¶ 28, 29)

17       At all times Monroe, Bromley and the 20 Unknown Agents were able to see

18  Vahram's head and upper torso through the pickup window. At no time did Vahram act

19  in a threatening manner or attempt to flee the o Monroe, Bromley and the 20 Unknown

20  Agents. At no time did Vahram present an immediate risk of death or bodily harm to any

21  person at the scene. Monroe, Bromley and the 20 Unknown Agents shot and killed

22  Vahram through the front windshield of his pickup without ever seeing any form of

23  aggression or threatening gesture by Vahram. Under no circumstances was this shooting

24  an act of self-defense or in defense of others by Monroe, Bromley and the 20 Unknown

25  Agents. At no time did Monroe, Bromley or any of the 20 Unknown Agents give any

26  warning to Vahram before shooting him. (FAC ¶ 30, 31, 32)

27       As supervisors on the scene, Monroe and Bromley were negligent in their control

28  and direction of the tactics utilized by the peace officers at the scene. As a result of

**PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE
UNITED STATES OF AMERICA'S MOTION TO DISMISS**

Monroe and Bromley's negligent direction and control of the tactics utilized at the scene, Monroe, Bromley and the 20 Unknown Agents ultimately fired numerous rounds at and in the general vicinity of Decedent Vahram, finally killing him. (FAC ¶ 35)

## B. There is No Qualified Immunity for Defendant Monroe, Defendant Bromley, and the 20 Unknown Agents

Qualified immunity only protects federal defendants from personal liability for their official conduct only so long as that conduct is "objectively reasonable and does not violate clearly-established federal rights." *Community House, Inc. v. City of Boise, Idaho,* 623 F. 3d 945, 964 (9th Cir. 2010)

As set forth above, it is clear that the actions of Defendant Monroe, Defendant Bromley, and the Twenty Unknown Agents at the scene of this operation on January 8, 2018 were not under any criteria "objectively reasonable." There was no reason whatsoever to shoot the elderly Vahram while he sat quietly in his pickup waiting to take his grandchildren to school that morning. He was simply sitting there waiting and they shot him for no reason and no justification. Plaintiffs have further alleged that at all times, Defendant Monroe and Defendant Bromley were in control of the scene, and directing the tactics that were being utilized by the 20 Unknown Agents at the scene when Vahram was killed by Defendant Monroe, Defendant Bromley, and the 20 Unknown Agents. (FAC ¶ 35) Each of these persons are alleged in the FAC to be individually responsible for this killing, each one violating Vahram's Fourth Amendment rights against unreasonable use of force which in this case ended in Vahram's death. (FAC ¶ 30,31)

As a consequence, plaintiffs have met the criteria whereby qualified immunity does not apply to Defendant Monroe, Defendant Bromley and the 20 Unknown Agents. Through their own individual actions, Defendant Monroe, Defendant Bromley and the 20 Unknown Agents have violated the Constitution and Vahram's Constitutional rights. See *Hydrick v. Hunter* (9th Cir. 2012) 669F. 3d 937, 942. Thus, in response to the two questions posed by the court in *James v. Rowland* (9th Cir. 2010) 606 F. 3d 937, 942 to

10

determine if qualified immunity applies: (1) "whether the defendant violated a constitutional right," and (2) "whether that right was clearly established," the answer in the present case is the defendants clearly violated Vahram's constitutional right under the Fourth Amendment and that right was clearly established by the wrongful, individual actions of Defendant Monroe, Defendant Bromley, and the 20 Unknown Agents.

This was not a "team effort" or some "generalized liability" that killed Vahram. See *Chuman v. Wright* (9th Cir. 1996) 76 F. 3d 292, 295  Defendant Monroe and Defendant Bromley were in control of the scene and directed the tactics that were utilized by the 20 Unknown agents at the scene. (FAC ¶ 35) Defendant Monroe, Defendant Bromley and the 20 Unknown Agents shot and killed Vahram without justification or provocation while he quietly sat in the driver seat of his pickup, waiting to take his grandchildren to school that morning. (FAC ¶ 30)

## C. **Plaintiffs are Within the State Statute of Limitations to Make a *Bivens* Claim as this Federal Complaint Was Filed Within the Six-Month Period After the Denial by Defendants and Court's Look to Analogous Provisions in State Law as a Source of a Federal Limitations Period**

Bivens actions are considered as personal injury claims and subject to the same statute of limitations and tolling laws as the state where the alleged injury occurred unless they are inconsistent with federal law. *Quintana-Martinez v. Rodriguez-Velez* (D.P.R. 2007) 553 F.Supp.2d 40, 41.

The statute of limitations in a Bivens claim represents a combination of federal and state law. *Loumiet v. U.S.* (D.D.C. 2013) 968 F.Supp.2d 142, 149, on reconsideration in part (D.D.C. 2014) 65 F.Supp.3d 19. When a federal action contains no statute of limitations, as is the case with Bivens claims, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period. *Doe v. U.S. Dep't of Justice* (D.C.Cir.1985) 753 F.2d 1092, 1114. A proper limitations provision must account for the characteristics of litigation under the analogous federal statute, including the policies underlying the federal cause of action and the practicalities

11

involved in litigating it. *McDonald v. Salazar* (D.D.C. 2011) 831 F.Supp.2d 313, 319, aff'd in part (D.C. Cir., July 20, 2012, No. 12-5023) 2012 WL 3068440; See *Burnett v. Grattan* (1984) 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (holding that the appropriate state limitations period for civil rights claims must account for the goals underlying the Civil Rights Act).

In the context of § 1983 claims, the United States Supreme Court has held that courts should borrow limitations periods from general or residual personal injury actions and not from intentional tort actions because constitutional claims "bear little if any resemblance to the common-law intentional tort." *Owens v. Okure* (1989) 488 U.S. 235, 249, 109 S.Ct. 573, 102 L.Ed.2d 594. Applying the general or residual limitations period for § 1983 claims best promotes the federal interests in uniformity, certainty, and minimization of unnecessary litigation. *See Id.* at 240, 109 S.Ct. 573. These same concerns underlie Bivens actions. *See Williams v. Hill* (D.C.Cir.1996) 74 F.3d 1339, 1340–41 - noting that the bodies of law for § 1983 and Bivens actions overlap in most respects.

According to California state law, no suit for money or damages may be brought against a government entity (or against a government employee acting in the scope of employment) unless and until a timely claim has been presented pursuant to the Government Claims Act (Gov.C. § 810 et seq.) and either acted upon or deemed rejected by the passage of time. Gov.C. §§ 945.4, 950.2, 912.4; *see DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 989-990; *Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 246.

Claims for personal injury (including wrongful death) or damage to personal property must be presented "not later than six months after the accrual of the cause of action." Gov.C. § 911.2; see *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1263-1264. Gov.C. § 945.6(a)(1) requires that "suit" be brought within six months of proper rejection of the claim. A claim must be filed within the applicable period of limitations for the appropriate civil action underlying the claim (i.e., two years for most

personal injury claims. See CCP § 335.1. The public entity must give written notice of its action (acceptance, rejection, etc.) or of its inaction which is deemed a rejection, in compliance with Gov.C. § 913.

*If the public entity sends proper written notice of the rejection, Plaintiff has six months thereafter to file suit against the entity*. Gov.C. § 945.6(a)(1); see *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209 (superseded by statute on other grounds as stated in *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 923, 221 CR3d 761, 777, fn. 2 (J. Werdegar dissent.opn.)); *Dowell v. County of Contra Costa* (1985) 173 Cal.App.3d 896, 900.

The six-month time limit supersedes CCP § 335.1, the two-year statute of limitations. The Government Claims Act is a self-contained body of law designed to totally control the procedures by which a claimant pursues recovery from a public entity and/or its employee. ***Thus, compliance with the claim filing provisions exempts plaintiff from the CCP § 335.1 two-year statute of limitations ordinarily applicable to personal injury actions***. (Emphasis added) *Schmidt v. Southern Calif. Rapid Transit Dist.* (1993) 14 Cal.App. 4th 23, 29 (suit against entity); *Massa v. Southern Calif. Rapid Transit Dist.* (1996) 43 Cal.App.4th 1217, 1222-1223.

Here, on November 27, 2018, Plaintiffs each presented a Claim for Damages to Defendant USA, by and through the Federal Bureau of Investigations, pursuant to, and in substantial compliance with, California Government Code § 910, et seq. and 28 U.S.C.  § 2401 (b) for damages sustained as a result of the incident alleged herein. The Federal Bureau of Investigations sent their rejection notice of Plaintiffs' Government Claims on October 19, 2019. Although a claim is deemed rejected where the entity fails to act within 45 days, the county may nevertheless reject the claim after 45 days, in which event claimant's deadline for filing suit is six months from the actual rejection (not two years from accrual). *Katelaris v. County of Orange* (2001) 92 Cal.App.4th 1211, 1216; *Glorietta Foods, Inc. v. City of San Jose* (1983) 147 Cal.App.3d 835. Failing to give such notice within 45 days of presentation of the late claim, the entity

1   waives the defense that the claim is untimely. Gov.C. § 911.3(b); *Roger v. County of*

2   *Riverside* (2020) 44 Cal.App.5th 510, 522-526, 257.

3       This Federal Complaint was filed on February 24, 2020, well within the six-

4   month time period in which to file a Complaint after receiving the rejection in October

5   19, 2019. Plaintiffs then had until April 19, 2020 to file their Federal Complaint as the

6   six-month time limit supersedes CCP § 335.1, the two-year statute of limitations. Thus,

7   since the six-month time limit after notice of rejection to file suit supersedes the two-

8   year statute of limitation, the Bivens Claims were timely made as Courts look to State

9   statute of limitations in regard to Bivens.

10       **D.** **Plaintiffs Can Make a *Bivens* Claim as Survivors Under Code of Civil**

11       **Procedure § 377.11 and § 377.30**

12       Defendants next argue that, only with respect to Bivens claim Nos. 8 and 9, these

13   claims fail as a matter of law as Plaintiffs lack standing.  According to Defendants,

14   unlike the other claims, claim Nos. 8 and 9 are not plead as survival claims.   At the

15   outset, Defendants are mistaken as all of the Bivens claims are plead on behalf of all

16   Plaintiffs – including Plaintiffs as heirs and the successor of interest of decedent under

17   377.30 and 377.11. *See Moreland v. Las Vegas Metro. Police Dep't* (9th Cir. 1998) 159

18   F.3d 365, 369; Fed. R. Civ. P. 17(b)(3) (capacity to sue in a representative capacity

19   generally depends on "the law of the state where the court is located"). The wrongful

20   death action is rooted in negligence and the negligent failure to supervise is likewise a

21   theory of negligence – arising out of the duties owed to decedent.  As such, these are

22   survivor claims.  Second, Defendants fail to demonstrate that a Bivens claim cannot be

23   brought by Plaintiffs as individuals.  Despite Defendants attempt to ignore that these two

24   causes of action are pled as survivor claims, it is clear as evidenced in paragraphs four

25   through six, that the Plaintiffs are Vahram's survivors. What is more, paragraphs 90 and

26   98 both reallege paragraphs four through six in relation to causes of action 8 and 9 as

27   well as virtually all of causes of action 6 and 7 which are survivor actions.

28   **V.**     **PURSUANT   TO   THE   FTCA   PLAINTIFFS   HAVE   ALLEGED**

## SUFFICIENT FACTS AGAINST DEFENDANT THE UNITED STATES OF AMERICA

### A. Complaints Under the FTCA are to be Liberally Construed in Favor of the Plaintiff

A pleading alleging causes of action based on the FTCA must state that a claim for relief contains: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. Fed. Rules Civ.Proc., rule 8 (a)

The intent and effect of these requirements is to permit a claim to be stated in general terms and to discourage battles over mere form of the statement. *U.S. v. Iroquois Apartments, Inc* (2nd Cir. 1957) 21 F.R.D. 151 Thus, a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests, as the purpose of a complaint is to enable the opposing party to answer and prepare for trial, and to give the defendant fair notice of the claim, the grounds upon which it rests,6 the general type of litigation involved, and the basis of the court's jurisdiction. *Mayle v. Felix* (2005) 545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582; *Mason v. County of Delaware Sheriff's Dept.* (2nd Cir. 1993) 150 F.R.D. 27; *Wright v. North Carolina* (4th Cir. 2015) 787 F.3d 256; *Wooten v. McDonald Transit Associates, Inc.* (5th Cir. 2015) 788 F.3d 490; *Topchian v. JPMorgan Chase Bank, N.A.* (8th Cir. 2014) 760 F.3d 843; *Skaff v. Meridien North America Beverly Hills, LLC* (9th Cir. 2007) 506 F.3d 832; Federal Procedure, Lawyer's Ed. § 62.33.

As required by the Federal Rules of Civil Procedure, Rule 8, Plaintiffs' FAC has provided notice to the Defendants of what the Plaintiffs' claims are under the FTCA and the grounds upon which those claims rest. Plaintiffs' FAC has provided sufficient facts to enable the Defendants to answer and prepare for trial and has given Defendants fair

15

notice of Plaintiffs' claims and the grounds upon which those claims rest, as well as Plaintiffs' damages.

### B. Plaintiffs FAC Alleges Sufficient Facts to State Causes of Action One, Two, Three, Four, and Five Under the FTCA

From the alleged facts discussed below, it is clear that plaintiffs have stated sufficient facts to satisfy Causes of One, Two, Three, Four, and Five under the Federal Torts Claims Act. These facts set for in paragraphs 26 through 37 of the FAC provide a definitive answer to Defense Counsel's question on page 17 of his motion, where he asks, "What did the agents of the United States do?" The answer given over and over in paragraphs 27 through 37 of the FAC is the agents of the United States killed Vahram for no reason while engaging in United States business. Plaintiffs have articulated over and over in the FAC that there was no justification whatsoever that Vahram was shot by the agents of the federal government. That is one of the reasons, namely, no "objectively reasonable" conduct by these agents, and as a result, there can be no qualified immunity to protect them from liability. *See Community House, Inc. v. City of Boise, Idaho* (9th Cir. 2010)  623 F. 3d 945, 964.

Decedent Vahram was a 55 year-old grandpa, sitting in a parked pickup outside of the residence that was to be searched, early in the morning, waiting to take his grandchildren to school. At all times, every single FBI agent at the scene  knew exactly what the person they were serving with the warrant looked like and that person, Kirakos Kesablyan, was a young man, 34 years old with young children, living in the home they were about to search, and not an elderly looking grandpa sitting outside in a pickup truck.  (FAC ¶ 27, 28, 29)

At all times Monroe and Bromley as FBI supervisors at the scene had a responsibility to protect any and all innocent bystanders that might be present when this operation began early in the morning on January 8, 2018. Instead of protecting an innocent bystander,  Monroe, Bromley in the 20 Unknown Agents shot and killed Vahram without any justification or provocation whatsoever while sitting quietly in the

1   driver seat of his pickup waiting to take his grandchildren to school that morning. (FAC

2   ¶ 28, 29)

3         At all times Monroe, Bromley and the 20 Unknown Agents were able to see

4   Vahram's head and upper torso through the pickup window. At no time did Vahram act

5   in a threatening manner or attempt to flee the o Monroe, Bromley and the 20 Unknown

6   Agents. At no time did Vahram present an immediate risk of death or bodily harm to any

7   person at the scene. Monroe, Bromley and the 20 Unknown Agents shot and killed

8   Vahram through the front windshield of his pickup without ever seeing any form of

9   aggression or threatening gesture by Vahram. Under no circumstances was this shooting

10  an act of self-defense or in defense of others by Monroe, Bromley and the 20 Unknown

11  Agents. At no time did Monroe, Bromley or any of the 20 Unknown Agents give any

12  warning to Vahram before shooting him. (FAC ¶ 30, 31, 32)

13        As supervisors on the scene, Monroe and Bromley were negligent in their control

14  and direction of the tactics utilized by the peace officers at the scene. As a result of

15  Monroe and Bromley's negligent direction and control of the tactics utilized at the scene,

16  Monroe, Bromley and the 20 Unknown Agents ultimately fired numerous rounds at and

17  in the general vicinity of Decedent Vahram, finally killing him. (FAC ¶ 35)

18        Clearly the facts set forth in FAC paragraphs 26 through 37 have provided

19  sufficient facts to state causes of action under the FTCA in Causes of Action One, Two,

20  Three, Four, and Five.

21        **C. <u>There is California Law Wherein Plaintiffs Can Assert the Negligence</u>**

22        **<u>Theories of Supervisory, Training, and Hiring Negligence</u>**

23        California Penal Code section 835a creates a special relationship between peace

24  officers and members of the pubic who are innocent bystanders to a police operation

25  such as the instant situation. At all times where there is a potential for violence and an

26  innocent bystander is present, an officer has a responsibility to act in an objectively

27  reasonable fashion to not endanger or harm that innocent bystander. As a consequence,

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE
UNITED STATES OF AMERICA'S MOTION TO DISMISS**

whereby negligent training of that peace officer such as Agent Monroe, Agent Bromley and Twenty Unknown FBI Agents.

At set forth in paragraph 56 of the FAC, due to the circumstances set forth above whereby officers must be properly trained to make objectively reasonable decisions regarding the use of firearms and deadly force, Defendant USA had a duty to reasonably hire, train, and supervise its peace officers. Sadly for Vahram, Defendant USA failed to adequately train and supervise its agents in the use of deadly force in an objectively reasonable manner, including Agents Monroe, Bromley, and Twenty Unknown FBI Agents who tragically killed Vahram.

## VI.    LEAVE TO AMEND SHOULD BE GRANTED IN THE ALTERNATIVE

Where the Rule 12(b)(1) motion is limited to the face of the pleadings, the court may grant leave to amend. FRCP 15(a). With some limitations, the court may grant leave to amend a complaint to remedy jurisdictional allegations that are defective as to form. [28 USC § 1653—"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"; *Arena v. Graybar Elec. Co., Inc.* (5th Cir. 2012) 669 F3d 214, 224—§ 1653 applies to defective pleading but cannot remedy defective jurisdiction itself]

Alternatively, should this Court find that the FAC is defective, the Court should grant Plaintiffs Leave to Amend the FAC to remedy the defects.

## VII.    CONCLUSION

Plaintiff respectfully requests the Court to deny Defendants Motion to Dismiss based on the grounds stated above or in the alternative, grant Plaintiffs Leave to Amend.


DATED:  October 20, 2020            **LAW OFFICES OF VICTOR L. GEORGE**



By:_____/S/ Meylin Alfaro_____
         VICTOR L. GEORGE
         MEYLIN P. ALFARO
         Attorneys for Plaintiffs

18

# DECLARATION OF MEYLIN P. ALFARO, ESQ.

I, Meylin P. Alfaro, declare as follows:

1. I am an attorney at law, duly licensed to practice before all the courts of the state of California. I am an associate attorney at the Law Offices of Victor L George. If called upon to do so, I could and would testify from my own personal knowledge as to the following:

2. This case arises from the excessive use of force used by the Federal Bureau of Investigation. Decedent, who was 55 years old, was sitting in his car outside of the residence at 10325 Horse Haven Street, Sun Valley, California when he was fatally shot by law enforcement officers executing an arrest warrant against Plaintiff (and Decedent's son) Kirakos Kesablyan. Decedent's death was caused by the City of Los Angeles and the United States, through the conduct of their respective law enforcement officers.

3. Plaintiffs filed an initial complaint in Los Angeles Superior Court on January 8, 2019. Plaintiffs filed against the County of Los Angeles, Los Angeles Police Department, Los Angeles County Sheriff's Department and Does 1-100, inclusive.

4. On November 27, 2018, Plaintiffs each presented a Claim for Damages to Defendant USA, by and through the Federal Bureau of Investigations, pursuant to, and in substantial compliance with, California Government Code § 910, *et seq*. and 28 U.S.C. § 2401 (b) for damages sustained as a result of the incident alleged herein.

5. On January 18, 2019, the Federal Bureau of Investigation sent a letter to Plaintiffs indicating that the Government Claims submitted by Plaintiffs were deficient and further action would need to be taken.

6. Plaintiffs submitted the required information to complete the claims on February 25, 2019.

7.  A denial and/or rejection from the Federal Bureau of Investigations was sent to Plaintiffs on October 9, 2019.

8.  On June 6, 2019, Plaintiffs filed Doe amendments for the Federal Bureau of Investigation, F.B.I. Agent Hannah Marie Monroe and F.B.I. Agent Bromley Renae.

9.  Proof of service was filed on June 18, 2019. These amendments were necessary because the newly sought Defendants were involved in the wrongful death that gives rise to this lawsuit.

10. These Defendants included the Federal Bureau of Investigation, F.B.I. Agent Hannah Monroe and F.B.I. Agent Renae Bromley, both of whom supervised the FBI Agents who were involved in and at the scene where the arrest warrant search was being conducted on January 8, 2018, the date that gave rise to this lawsuit.

11. Plaintiffs filed their State Complaint Court Case No. 19STCV01385 on January 8, 2019, and as of that time Plaintiffs were unaware that the submitted Federal Government Claim was deficient.

12. After complying with the requested information for the Government Claims from the Federal Government, the claims were completed on February 25, 2019. Thus, Defendants were unable to name Defendant United States of America on the State Complaint Court Case No. 19STCV01385.

13. After serving the Doe entities, F.B.I, F.B.I. Agent Monroe and F.B.I. Agent Bromley on June 13, 2019 and filing Proofs of Service of Summons, it was discovered that Government entities must be named in the operative complaint and cannot be Doed into a lawsuit and that the proper Defendant to name was the United States of America, and not the F.B.I.

14. Before Plaintiffs could move to be given leave to file an amended complaint to the State Complaint Court Case No. 19STCV01385 in Los Angeles Superior Court, erroneously named Defendant Federal Bureau of Investigation moved to

**PLAINTIFFS' OPPOSITION TO DEFENDANTS HANNAH MONROE, RENAE BROMLEY, AND THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**

remove this lawsuit to the United States District Court for the Central District of California.

15. This action was removed to the District Court on September 12, 2019 and given Case No.: CV 19-7918 CAS (PLAx). The Federal Bureau of Investigation then moved to dismiss this action on September 25, 2019, asserting that Plaintiffs had improperly named the Federal Bureau of Investigation as a Defendant.

16. On October 11, 2019, counsel for erroneously named Defendant Federal Bureau of Investigation and Plaintiffs' counsel entered into a stipulation dismissing Defendant Federal Bureau of Investigation only. On November 18, 2019, this Court issued an Order of Remand as to Case No.: CV 19-7918 CAS (PLAx).

17. On September 15, 2020, the Los Angeles Superior Court Case No. 19STCV01385 held a CMC wherein the Defendant Federal Bureau of Investigation was dismissed in that state court case. Plaintiff were ordered to serve Defendants, F.B.I. Agent Monroe and F.B.I. Agent Bromley with the State Court Complaint and the CMC was continued to January 5, 2021.

18. On February 24, 2020, Plaintiffs refiled in Federal Court against Defendants United States of America and F.B.I. Agent Monroe, F.B.I. Agent Bromley, and Twenty Unknown F.B.I. Agents and were given Court Case No. 2:20-cv-01774-CBMMAA, this case.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.   Executed on October 20, 2020, at Torrance, California.


_____/S/ Meylin Alfaro_____
MEYLIN P. ALFARO
Declarant