E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
DANIEL A. BECK (Cal. Bar No. 204496)
JOSEPH W. TURSI (Cal. Bar No. 300063)
Assistant United States Attorneys
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-2574 | 3989
     Facsimile: (213) 894-7819
     E-mail: Daniel.Beck@usdoj.gov
            Joseph.Tursi@usdoj.gov

Attorneys for Defendant
The United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANAIT STEPANYAN, KIRAKOS KESABLYAN, and KADZHIK KESABLYAN, individuals and heirs of Decedent VAHRAM KESABLYAN; and ANAIT STEPANYAN as Successor in Interest to VAHRAM KESABLYAN, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | No. 2:20-cv-01774 CAS (PLAx) <br> No. 2:20-cv-10868 CAS (PLAx) <br> Consolidated <br><br> **DEFENDANT UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE PLAINTIFFS' CLAIMS OF ECONOMIC DAMAGES** <br><br> [*Declaration of Daniel A. Beck and proposed order filed concurrently*] <br><br> Pretrial Conference: August 28, 2023 <br> Conference Time: 11:00 a.m. <br> Courtroom: 8D <br><br> Hon. Christina A. Snyder <br> United States District Judge |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.  INTRODUCTION AND SUMMARY ................................................................ 1

II.  LEGAL STANDARD FOR EXCLUDING DAMAGES CLAIMS BECAUSE OF A PLAINTIFF'S FAILURE TO DISCLOSE ADMISSIBLE CALCULATIONS AND SUPPORTING DOCUMENTATION ........................... 2

III.  DAMAGES RECOVERABLE FOR WRONGFUL DEATH AND SUCCESSOR-IN-INTEREST CLAIMS UNDER CALIFORNIA LAW ............. 4

    1.  Wrongful Death Damages .................................................. 4

    2.  Successor-In-Interest Damages ........................................ 4

IV.  PLAINTIFFS' WILLFUL AND CONTINUOUS OBSTRUCTION OF DISCOVERY ON THEIR ECONOMIC DAMAGES CLAIMS ......................... 5

    A.  Magistrate Judge Abram's Order Granting The United States' Motion To Compel Plaintiffs To Answer Interrogatories And Produce Documents. ................................................................ 6

    B.  Plaintiffs' Failure To Produce Any Admissible Calculations of Financial Loss And Responsive Documents Relating To Their Damages Claims, Despite Magistrate Judge Abrams' Order. ..................... 7

    C.  Lack of Veracity in Anait Stepanyan's Claims of Financial Loss ............... 9

    D.  The Obstruction By Plaintiffs' Counsel Of Deposition Questions Probing The Veracity Of Plaintiffs' Claims Of Lost Financial Support .... 12

    E.  The Unsupported Estimates By Kirakos and Kadzhik Kesablyan That They Lost Business Income Due to Mourning Vahram's Death. ............... 14

V.  ARGUMENT ............................................................................... 15

    A.  Plaintiffs Did Not Disclose Any Admissible Calculation of Their Claimed Economic Damages, The Basis For Such Calculations, Or Any Substantiating Documents. ........................................ 15

    B.  Plaintiffs Were Not Substantially Justified In Failing To Disclose Admissible Economic Damages Calculations And Supporting Documentation ............................................................. 18

VI.  CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Hoffman v. Constructive Protective Services, Inc.*,
  541 F.3d 1175 (9th Cir. 2008) ................................................................. 1, 3

*In re Banner Bank*,
  2022 WL 17080198 (C.D. Cal. July 12, 2022) ........................................ 15

*Joshua David Mellberg, LLC v. Will*,
  386 F. Supp. 3d 1098 ................................................................................ 18

*McCoy v. City of Vallejo*,
  2022 WL 4472881 (E.D. Cal. Sept. 26, 2022) ......................................... 14

*R&R Sails, Inc. v. Ins. Co. of Penn.*,
  673 F.3d 1240 (9th Cir. 2012) .................................................................... 1

*Torres v. City of L.A.*,
  548 F.3d 1197 (9th Cir. 2008) .................................................................... 3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ........................................................ 15, 18, 3

**State Cases**

*Corder v. Corder*,
  41 Cal.4th 644 (2007) ................................................................................. 4

*Fibreboard Paper Prod. Corp. v. E. Bay Union of Machinists, Local 1304, United Steelworkers of Am., AFL-CIO*,
  227 Cal. App. 2d 675 (1964) ..................................................................... 17

*Krouse v. Graham*,
  19 Cal. 3d 59 (1977) (en banc) ........................................................ 14, 17, 4

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014) .................................................................... 17

*Orozco v. WPV San Jose, LLC*,
  36 Cal. App. 5th 375 (2019) ...................................................................... 17

*Parlour Enterprises, Inc. v. Kirin Group, Inc.*,
  152 Cal. App. 4th 281 (2007) .................................................................... 17

**Federal Statutes**

28 U.S.C. § 2674 ..................................................................... 5, 7, 8, 9

**State Statutes**

California Code of Civil Procedure § 337.34 ................................ 5

California Code of Civil Procedure § 337.34(b) ........................... 5

California Code of Civil Procedure § 377.60 ................................ 4

California Code of Civil Procedure § 377.61 ................................ 4

**Rules**

Federal Rules of Civil Procedure 26 ..................................... *passim*

Federal Rules of Civil Procedure 30 ........................................ 14

Federal Rules of Civil Procedure 34 ..................................... 1, 3

Federal Rules of Civil Procedure 37 ..................................... *passim*

Local Rule 7-3 ...................................................................... v

## **DEFENDANT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2**

PLEASE TAKE NOTICE that on August 24, 2023 at 11:00 a.m., or as soon thereafter as it may be heard, Defendant the United States of America will, and hereby does, move this Court for an order precluding Plaintiffs from introducing testimony, evidence, or argument regarding any **economic damages** for their claims in this lawsuit, beyond their claim for funeral costs. This motion will be made in the First Street Federal Courthouse before the Honorable Christina A. Snyder, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 8D.

The United States moves pursuant to Fed. R. Civ. P. 26(a) on the grounds that the Plaintiffs have failed to disclose, by their initial disclosures or otherwise, any admissible calculation of economic damages they claim to have suffered from the death of Vahram Kesablyan (i.e., calculations of their claimed lost financial support, as opposed to non-economic damages for their loss of companionship/consortium). Although Plaintiffs' initial disclosures stated they would provide expert testimony calculating their claimed economic damages and would produce supporting documents, Plaintiffs thereafter failed to disclose any such expert testimony quantifying their claimed economic damages, and also failed to provide any substantiating documentation or evidence.

Pursuant to Rule 37(c)(1), Plaintiffs are therefore barred from introducing claims of economic damages or financial loss at trial, beyond their claimed funeral costs.

Plaintiffs' failure to disclose also lacks any justification because Magistrate Judge Abrams granted the United States' motion to compel and ordered Plaintiffs to produce all documents and interrogatory responses relating to their claims of economic damages from Vahram's death. *See* Dkt. 63. Although objecting that this required expert testimony, Plaintiff, then still failed to produce any calculations, documentation, or tax returns substantiating their claims of suffering financial loss from Vahram's death.

Plaintiffs also failed to produce any evidence controverting the public record that the State of California revoked Vahram Kesablyan's contractor's license back in 2013, and he never lawfully worked thereafter, or reported any taxable income. Nor did

iv

Plaintiffs produce any evidence to controvert Vahram's medical records and testimony of his treating physician, which confirmed that Vahram had already retired in 2016, and that from 2016-2017 he received medical treatment for his adjustment to his retired state. Plaintiffs claimed financial loss, but disclosed no calculations or support.

Finally, this motion is also made on the grounds that while wrongful death plaintiffs may recover non-economic damages for their loss of companionship and consortium, California law bars such plaintiffs from recovering damages for grief, mourning, or emotional pain caused by the death. Insofar as Plaintiffs Kirakos and Kadzhik Kesablyan contend that their mourning over Vahram's death caused them to lose business opportunities, not only did Plaintiffs fail to produce admissible calculations of alleged lost profits, these claims are barred for this independent reason.

Accordingly, Plaintiffs should be precluded from arguing, requesting, or presenting testimony regarding claimed economic damages at trial, apart from their claim for $28,200 in funeral costs. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on July 19, 2023.

Dated: July 31, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

    /s/  *Daniel A. Beck*
DANIEL A. BECK
Assistant United States Attorney

Attorneys for Defendant
The United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY

Three named Plaintiffs bring wrongful death claims in this action based upon the death of Vahram Kesablyan: (1) the decedent's wife, Anait Stepanyan, (2) his son Kirakos Kesablyan; and (3) his son Kadzhik Kesablyan. Ms. Stepanyan also brings successor-in-interest claims. Pursuant to Fed. R. Civ. P. 26(a) and 37(c)(1), the United States moves *in limine* to preclude Plaintiffs from introducing testimony, argument, or evidence regarding economic losses they claim to have suffered as a result of Vahram's death, beyond the $28,200 in funeral costs that Plaintiffs claim to have incurred.

Under Fed. R. Civ. P. 26(a)(1)(A)(ii), the plaintiff must provide "a copy—or a description by category and location—of all documents ... that the [plaintiff] has in its possession, custody, or control and may use to support its claims." *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012). The plaintiff must provide "a computation of each category of damages claimed" and must "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." *Id.* If they do not, then Fed. R. Civ. P. 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constructive Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008)

Here, Plaintiffs failed to disclose any admissible calculation of any claimed financial loss from the death of Vahram Kesablyan, apart from their funeral costs. Nor did they produce any substantiating documentation or expert testimony. Instead, in their amended initial disclosures, under the category "Damages," Plaintiffs asserted only that "Plaintiffs will seek damages for the loss of their father and husband. Plaintiffs will retain an expert to calculate Plaintiffs' damages." Beck Decl., Exh. 1. Plaintiffs did not, however, thereafter disclose any expert calculations of claimed economic damages prior to (or even after) the August 29, 2022 deadline for expert disclosures. [Dkt. 50].

Plaintiffs' failure to satisfy their disclosure obligations under Fed. R. 26(a) was

aggravated by their remarkable obstruction of discovery on their economic loss claims. The United States served interrogatories and document requests asking the Plaintiffs to disclose in detail any economic damages they claimed, and produce all documents (including tax returns) substantiating or relating to any claims of economic loss from Vahram's death. Plaintiffs did not provide any calculations in response, however, objecting that it required expert testimony. And in response to the United States' document requests, the Plaintiffs produced only produced fourteen (14) pages of documents, of which only their funeral cost receipts related to economic loss.

After Plaintiffs repeatedly promised but failed to address these deficiencies, the United States moved to compel. Magistrate Judge Abrams granted that motion [Dkt. 63], requiring Plaintiffs to produce complete interrogatory responses and substantiating documents by August 10, 2022, while harshly criticizing the Plaintiffs and their counsel for their obstruction of basic discovery on their damages claims. Despite Magistrate Judge Abram's crystal-clear order, Plaintiffs then again failed to produce any tax returns, income statements, or other financial documents to substantiate their claims of financial loss. Nor did Plaintiffs disclose any calculations of their alleged economic losses, or identify their basis. The only specific calculation of financial loss they ever provided was that they had paid $28,200 in funeral costs.

Pursuant to Rule 26 and 37, Plaintiffs are therefore barred from seeking economic damages at trial beyond those funeral costs. Plaintiffs can still attempt to seek *non-economic* damages for loss of companionship and consortium from Vahram's death, but they cannot seek damages for alleged financial loss from the death.

## II.   LEGAL STANDARD FOR EXCLUDING DAMAGES CLAIMS BECAUSE OF A PLAINTIFF'S FAILURE TO DISCLOSE ADMISSIBLE CALCULATIONS AND SUPPORTING DOCUMENTATION

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), the plaintiff must provide "a copy—or a description by category and location—of all documents ... that the [plaintiff] has in its possession, custody, or control and may use to support its claims." Pursuant to Rule

26(a)(1)(A)(iii), the plaintiff must also provide "a computation of each category of damages claimed" and must "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based."

As the automatic enforcement rule for these provisions, Fed. R. Civ. P. 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constructive Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (affirming grant of motion in limine to exclude evidence of undisclosed damages computations). Rule 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Ninth Circuit has explained that this is "a self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The party facing a request for exclusionary sanctions under this provision bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *See Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008) (district court abused discretion in failing to grant motion in limine to exclude non-disclosed expert testimony).

The standard for granting exclusion is somewhat stricter if granting exclusion would require dismissing an entire claim or lawsuit. In such cases, the district court is also required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith. With the instant motion in limine, the United States does not seek to entirely exclude Plaintiffs' damages claims (defeating their wrongful death claims entirely), but rather to exclude them from presenting testimony of alleged *economic* damages besides funeral costs, leaving non-economic damages. Thus the stricter standard does not apply here. Even if it did apply, however, testimony regarding alleged financial loss should still be excluded because—as discussed below—the Plaintiffs' failures were willful.

## III.   DAMAGES RECOVERABLE FOR WRONGFUL DEATH AND SUCCESSOR-IN-INTEREST CLAIMS UNDER CALIFORNIA LAW

### 1.   Wrongful Death Damages

In a wrongful death action governed by California law, the decedent's heirs may recover damages for the loss they personally have sustained from the death. *See Corder v. Corder*, 41 Cal.4th 644, 651 (2007). Wrongful death claims thus do not belong to the decedent, but rather to the persons specified in Cal. Code Civ. P. § 377.60. Wrongful death plaintiffs may potentially recover for their non-economic loss (including loss of love, companionship, and consortium). *See* BAJI 14.50 (Measure of Damages-Death of Adult); CACI 3921. Wrongful death plaintiffs may not, by contrast, recover for "1. Any pain or suffering of the decedent; 2. Any grief or sorrow of the heirs; or 3. The poverty or wealth of any heir." *Id.*; *see also Krouse v. Graham*, 19 Cal. 3d 59 (1977) (en banc) (grief damages theories must be excluded, and "a simple instruction excluding considerations of grief and sorrow in wrongful death actions will normally suffice.").

Beyond such non-economic damages, wrongful death plaintiffs may also seek specific types of economic damages. *See* BAJI 14.50; CACI 3921. The measure of such economic damages, however, is not the decedent's "lost gross business income," or their relatives' asserted lost income caused by their grief/mourning, but rather the extra financial support that the decedent would allegedly have contributed to the family, had they lived to their life expectancy. *Id.* In other words, the measure of such economic damages is the excess monetary contributions—above their costs, taxes, and expenses— that the decedent would have contributed.

Finally, wrongful death plaintiffs may also seek to recover their funeral costs. *Id.*

### 2.   Successor-In-Interest Damages

As the opposite of a wrongful death claim[1], a successor-in-interest claim permits recovery only of those damages that *the decedent* suffered between the time of their

---

[1]   Wrongful death plaintiffs are expressly limited to damages that are not recoverable in a successor-in-interest action. *See* Cal. Code Civ. P. § 377.61.

4

injury and the time of their death. The types of damages that may be sought by such a claim are narrowly limited, however, for lawsuits filed before January 1, 2022.[2] Successor-in-interest claims are governed by Cal. Code Civ. P. § 337.34(a), which only permits the following types of damages:

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement.

Successor-in-interest damages are thus not recoverable against the United States here for two reasons. **First**, Congress has barred awarding any punitive or exemplary damages against the United States under the Federal Tort Claims Act. *See* 28 U.S.C. § 2674. **Second**, Vahram Kesablyan incurred no economic losses between the time of his shooting (6:02 a.m.) and his death (he was pronounced dead at the hospital at 7:00 a.m.). Plaintiffs thus have disclosed no claimed economic losses allegedly incurred by Vahram over that short period, nor could they. And pain and suffering damages may not be recovered under California law. Accordingly, while Anait Stepanyan asserted successor-in-interest claims in the Second Amended Complaint, those successor-in-interest claims have no recoverable damages against the United States. The named Plaintiffs can instead only seek to recover as wrongful death claimants, subject to the limitations imposed by the Federal Rules of Civil Procedure, the FTCA, and California tort law.

## IV.   PLAINTIFFS' WILLFUL AND CONTINUOUS OBSTRUCTION OF DISCOVERY ON THEIR ECONOMIC DAMAGES CLAIMS

After receiving Plaintiffs' amended initial disclosures (*see* Beck Decl., Exh. 1), which did not disclose any damages calculations and provided no supporting documents

---

[2]    California recently changed this rule for new cases filed after 2022, in order to allow survival actions to seek damages for pain and suffering that the decedent suffered before their death. *See* Cal. Code Civ. P. § 337.34(b). But this case was filed in 2020.

apart from their receipts for funeral costs, the United States served independent sets of interrogatories and document requests on the three named Plaintiffs, and also served a fourth set on Ms. Stepanyan in her capacity as successor-in-interest. These requests focused on asking Plaintiffs to identify in detail any calculations of their claimed economic damages or losses, to explain the basis of such calculations in detail, and to produce all documents relating to their alleged economic loss from the death (including their tax returns). In response to the United States' seventy-one (71) document requests for each Plaintiff, however, the Plaintiffs collectively produced fourteen (14) total pages as their entire document production in this lawsuit (none of which related to their damages claims, apart from receipts for funeral costs), gave boilerplate objections to the interrogatories, and provided no signed verifications.

After months of enormous efforts to find out the basis for Plaintiffs' damages claims, after repeatedly meeting and conferring to fix the severe discovery deficiencies, and after many broken promises, the United States was forced to move to compel.

### A.    Magistrate Judge Abram's Order Granting The United States' Motion To Compel Plaintiffs To Answer Interrogatories And Produce Documents.

Granting the Defendants' motion by Order dated July 22, 2022 [Dkt. 63], after having reviewed the long record of the parties' correspondence, Magistrate Judge Abrams criticized the Plaintiffs and their counsel for obstructing even the most basic discovery directed at their economic damages claims:

> The Court is greatly troubled by plaintiffs and their counsel's failure to comply with their obligations under the Court's Local Rules, the Federal Rules of Civil Procedure, and the Central District's Civility and Professionalism Guidelines found at the Court's website under "Attorney Admissions," …. The Court finds that plaintiffs and plaintiffs' counsel's conduct with respect to the **very basic tasks** of fully and completely responding to discovery requests in an action *they* filed in this Court, failing to live up to their agreements with respect to deadlines for providing responses and/or documents, and failing to comply with the Local Rule 37 procedures regarding discovery disputes, does not comport with the

6

standards expected of litigants and counsel before this Court, or with the professionalism expected by the Court from parties in federal cases to work cooperatively and in good faith to confer with each other on such elementary discovery issues as are raised herein.

*Id.* (bold and italic emphasis original). Magistrate Judge Abrams ordered Plaintiffs, by August 10, 2022, to provide full and complete responses to the interrogatories and document requests, including *inter alia*:

Each responding plaintiff must provide full and complete responses to defendant's Interrogatory numbers 8-10, and must produce all responsive documents in his or her possession, custody, or control, in response to defendant's RFP numbers 51-53, including all documents relating to each plaintiff's alleged loss of income, including but not limited to tax returns for the last ten years, as well as those of any business(es) that allegedly lost income as a result of decedent's death;

*Id.* at p. 4. The Order also required Plaintiffs' counsel to file declarations attesting that they had read the Local Rules and would abide by them in the future. *Id.*

**B.    Plaintiffs' Failure To Produce Any Admissible Calculations of Financial Loss And Responsive Documents Relating To Their Damages Claims, Despite Magistrate Judge Abrams' Order.**

Although Magistrate Judge Abrams had ordered them to comply in full by August 10, 2022, the four Plaintiffs then produced only 80 more pages of documents, which consisted entirely of 2019, 2020, and 2021 tax returns for a business called "LA Luxury Rides, Inc.," and another business called "On-Time Towing & Impound Yard, Inc." Plaintiffs produced no tax returns prior to 2019, although Vahram died on January 8, 2018 (i.e., they produced nothing that might substantiate or controvert any alleged impact of the death on a business). Plaintiffs produced no tax returns for Vahram Kesablyan, for his contracting business, or for his wife Anait Stepanyan. *See* Beck Decl., ¶ 2. And apart from three photographs of the decedent's truck, the Plaintiffs produced no other documents in this case (having produced only 97 pages total). *Id.*

Magistrate Judge Abrams' Order also compelled Plaintiffs to make full and

complete supplemental responses to the United States' interrogatories nos. 8-10, asking them to identify their claimed economic losses and explain the basis for that claim in detail. Plaintiff Anait Stepanyan's response to interrogatory no. 8, however, was:

> Objection. Plaintiff objects to this request on the grounds that it is overbroad, vague, ambiguous, calls for speculation, and calls for expert opinion. Without waiving said objections, responding party responds as follows: Yes, as decedent was the sole provider of plaintiff and responding party did not work. Decedent made anywhere from $600,000.00 per year to $1,500,000.00 per year. These amounts were calculated using estimates based on what decedent informed Plaintiff he made. To the extent that decedent would have lived, he would have been making about the same amount of income. Viken L. Yepremian Accounting, 6222 N. First St., Fresno, CA 93710 was decedent's tax preparer and would have such records but has indicated that they have no records for taxes done for decedent. Responding party has made a reasonable and good faith effort to obtain the information requested. The Internal revenue Service might also have the requested documents in this category. Discovery is ongoing and Plaintiff reserves the right to supplement this response.

Beck Decl., Exh. 2. Ms. Stepanyan did not explain what the numbers represented beyond stating that they were her estimates of gross business income that Vahram told her his business had made over an unspecified time period. Plaintiffs never provided any calculation of her lost financial support, or any calculation of annual profits that Vahram's business had putatively earned prior to his death. Plaintiffs never provided any expert testimony on these subjects, or any supporting documentation (or indeed, any documentation at all regarding the finances of Vahram Kesablyan and Anait Stepanyan). *See* Beck Decl., ¶¶ 2-3.

For their part, Kadzhik and Kirakos Kesablyan both answered interrogatory no. 8 as follows: "Yes, lost approximately $300,000.00 or more per year for the past 4 years since the incident due to loss of business due to mourning. Exact amounts to be determined by experts. Discovery is ongoing and Plaintiff reserves the right to supplement this response." Beck Decl., Exh. 3 (Kirakos response); *Id.*, Exh. 4 Kadzhik response). Again, no such expert testimony was ever disclosed, however, and no

1    documentation showing any alleged lost business profits was ever produced.

2       **C.    Lack of Veracity in Anait Stepanyan's Claims of Financial Loss**

3       Per the State of California's public records, Vahram's contractor's license expired

4    back on May 31, 2012, after he was found working on a suspended license. *See* Beck

5    Decl., Exh. 5. His contractor's bond was cancelled on March 15. 2013. *Id.* His worker's

6    compensation insurance expired on March 15, 2013. *Id.* The State of California sent him

7    a notice of revoked license on July 4, 2013, informing him that his license was revoked.

8    *See* Beck Decl., Exh. 6. Pursuant to the public posting of that citation, his license was

9    revoked, and he was thereafter prohibited by law from working as a contractor in

10    California. *See* Beck Decl., Exh. 7.

11       Unsurprisingly, given that it would have been illegal for Vahram to work, Ms.

12    Stepanyan conceded in her supplemental interrogatory responses that she could find no

13    tax returns or any other documentation substantiating her claims of lost income from

14    Vahram's death. *See* Beck Decl., Exh. 2.

15       This did not deter Ms. Stepanyan, however, who testified at her deposition that

16    Vahram was still working at the time of his death:

17       Q I want to look at Exhibit 2. And it's up on the screen, the Second Supplemental

18       Response to 4 Interrogatories, No. 8. On Page 9, you'll see it 5 states, "To the

19       extent that decedent would have lived, he would have been making about the same amount of income."

20       A I do see that.
      Q What do you base that belief on?

21       A Because my husband was a working man. He was able to work. During the 30

22       years in America, he worked day and night.
      Q Did he ever retire from working?

23       A No.

24    Anait Stepanyan Dep. Tr., 78:2-14 (Beck Decl., Exh. 8). Ms. Stepanyan also claimed she

25    could not recall whether Vahram had ever told her he could not do construction work

26    any more:

27       Q Did Vahram ever tell you that he was unable to do construction work anymore?
      A I don't recall. No, I don't recall.

28

1    *Id.*, 88:13-15 (Beck Decl., Exh. 8).

2       In reality, Vahram was diagnosed with abdominal cancer in 2015. Although it was

3 treated and went into remission in early 2016, his health was left damaged. He informed

4 his treating oncologist, Dr. Stephen J. Forman, that he was retired, and he received

5 extensive counseling and medication from Dr. Forman from 2016-2017 to address and

6 treat his adjustment his retired state. Vahram's family was well aware of his retired state

7 and physical condition. As Dr. Forman recorded in his clinical note on July 21, 2016:

> I received a lot of calls about him from family members about his mental status as he appears to have bouts of angry outbursts and sometimes seems a little depressed and he is not working, likely due to the disease and the chemotherapy and is involved with taking care of his grandchildren, but there now occasions where he does not pick them up from school anymore. I had a talk with Mr. Kesablyan and his family about this and he actually to my pleasant surprise had some insight into this as he recognizes that he would have these outbursts and felt bad after each one so he was willing to try the medication to see if this might help him.

Beck Decl., Exh. 9. Dr. Forman's records also confirmed that he repeatedly discussed

Vahram's retirement and medical treatment with his wife, Plaintiff Anait Stepanyan. As

Dr. Forman's clinical note from February 16, 2017 stated: "There has been a big change

in his overall activities since he developed lymphoma as he is not working anymore and

he and I and his wife spoke about this again today …. I believe that some of the things

he is experiencing in terms of fatigue are really psychological in origin." Beck Decl.,

Exh. 10.

      The United States deposed Dr Forman, who confirmed his medical records,

confirmed that he had treated Vahram and prescribed him medication and counseling to

help adjust to his retired status, and confirmed that he had multiple discussions about

these issues with Ms. Stepanyan and Vahram's other family members, including a

discussion with Ms. Stepanyan on February 20, 2017 as follows:

> And it states here there has been a big change in his overall activities since he developed lymphoma as he is not working anymore, and he his and wife -- he and I and his wife spoke about this again today.

> Do you see that?
> A I do.
> Q And does this reflect that you spoke to him at this time and his wife about the fact that he was not working anymore?
> A Yes.

Dr. Forman dep. tr. at 18:7-16 (Beck Decl., Exh. 11). Dr. Forman testified that Vahram had stopped working because of the cancer's effect on him:

> THE REPORTER: And the reason he wasn't working was because of the consequences -- physical consequences of his lymphoma?
> MR. COE: Speculation.
> THE WITNESS: The overall effect on him physically and psychologically.

Dr. Forman dep. tr. at 18:21-19:1 (Beck Decl., Exh. 11).

Yet not only did Ms. Stepanyan testify that Vahram was working until his death, she even testified that he was perfectly healthy before his death:

> Q Was Vahram healthy before his death on 9 January 8th, 2018?
> A Yes.
> Q Are you aware of any sort of medical services that Vahram sought in the week before his death?
> A I don't recall, no. I don't recall, no.
> Q Did Vahram ever tell you before his death that he was -- in the months before his death that he was suffering from any severe abdominal pain, for example?
> A No.

Anait Stepanyan dep. tr., 85:8-17 (Beck Decl., Exh. 8).

Again, the reality was very different. Vahram had continuously complained of serious abdominal pain before his death on January 8, 2018. On January 5, 2018—just three days prior to his death—his son called the emergency room at City of Hope.

| 01/05/2018 - Nurse Triage in COH CALL CENTER (continued) |
|---|

**Nursing Notes**

**Telephone Encounter**

Alexandra Yin Ling Ching, RN at 1/5/2018 1456

Vahram Kesablyan is a 55 y.o. male complaining of ongoing abdominal pain and nausea for months. Patient's history was provided by child and chart review.

**Initial Assessment:**
History of abdominal large cell lymphoma, S/P RCHOP completed in 12/2015, last follow up by Dr. Forman on 2/16/17. Reports ongoing severe abdominal pain and nausea for months. States patient sought evaluation at local ER in Burbank Providence Hospital few months ago with negative work-up. Son is insisting to follow up with MD ASAP.

11

1 | *See* Beck Decl. Exh. 12.

2 | **D.     The Obstruction By Plaintiffs' Counsel Of Deposition Questions**

3 | **Probing The Veracity Of Plaintiffs' Claims Of Lost Financial Support**

4 | Ms. Stepanyan's problems with testifying truthfully about Vahram's health and

5 | his alleged business success were aggravated by Plaintiffs' counsel improperly

6 | obstructing Ms. Stepanyan not to answer questions probing into the veracity of her

7 | claims of having lost financial support from Vahram.

8 | Q Did you inherit any property from Vahram?

9 | ATTORNEY N. COE: Privacy. Beyond the scope. What difference does that make? I'm going to instruct her not to answer.

10 | ATTORNEY D. BECK: Well, part of the issue here is loss of financial support.

11 | ATTORNEY N. COE: That has nothing to do with inheritance, particularly inheritance of property. I'm not going to let her --

12 | ATTORNEY D. BECK: That's fine. If you're going to instruct her not to answer --

13 | ATTORNEY N. COE: I'm going to instruct her not to answer. (Indiscernible crosstalk.)

14 | ATTORNEY D. BECK: -- her income and her property, then so be it.

15 | ATTORNEY N. COE: You can ask her about her income, if she receives any income or not, but you cannot ask her about her property.

16 | ATTORNEY D. BECK: First, I want to ask -- and, again, you can instruct her not to answer, but she is maintaining a survivorship action.

17 | Q But did Vahram have a will?

18 | ATTORNEY N. COE: Again, I'm going to instruct her not to answer.

19 | ATTORNEY D. BECK: Despite knowing that this is a survivorship action, you're going to instruct her not to answer that question?

20 | ATTORNEY N. COE: Yes.

21 | Anait Stepanyan Dep. Tr., 53:13-24. (Beck Decl., Exh. 8). Plaintiffs' counsel instructed

22 | Ms. Stepanyan not to answer questions about where Vahram's alleged income had gone:

23 | Q The question, and I'll restate it, is: Given that you've stated in your interrogatory responses that the decedent made anywhere from $600,000 per year to $1.5

24 | million per year, do you own any property that was purchased with that income?

25 | ATTORNEY N. COE: It's beyond the scope -- strike that. No foundation. It violates right to privacy. It's harassment and irrelevant with respect to the actual

26 | lost earnings that she is claiming. And I'm going to instruct her not to answer that

27 | question.

28 | THE WITNESS: I will heed my attorney's advice.

> Q Okay. And follow-up question. I assume the answer is going to be the same, but I'm going to ask it. Do you know if you own any stocks or other investment that were purchased with this income?
>
> ATTORNEY N. COE: All right. Irrelevant. Harassment. There's no foundation for this with respect to the issue of lost income, and I'm going to instruct the witness not to answer.
>
> THE WITNESS: I'll heed to my attorney's advice.

Anait Stepanyan dep. tr., 62:13-63:10 (Beck Decl., Exh. 8). Plaintiffs' counsel insisted that the Defendant could only ask Plaintiff "what income she lost," and could not probe beyond that, instructing Ms. Stepanyan not to answer further questions.

> ATTORNEY N. COE: I'm an old man and I've never heard this before. I've never heard anybody ask this question. Come on, man.
>
> ATTORNEY D. BECK: That's great, but you have a plaintiff who is claiming that she's lost a million dollars in income per year.
>
> ATTORNEY N. COE: I do wrongful deaths all the time and I've never heard this before, not once.
>
> ATTORNEY D. BECK: Well, I don't know who your plaintiffs have been, but your plaintiffs are making wild financial claims, and I'm entitled to probe them.
>
> ATTORNEY N. COE: Just ask what is the income she's lost and what's the basis for that income, and then they have to prove it up. And if they can't prove it up, that's it. And if they can, they can.
>
> ATTORNEY D. BECK: I'm not -- I'm not required --
>
> ATTORNEY N. COE: You don't get to ask them about inheritance. I'm not going to let you do that.
>
> ATTORNEY D. BECK: I've understood your objection. And we are going to get it on the record, and you can instruct her not to answer, and then we'll take it up to the court and then you can explain it.

Anait Stepanyan dep. tr., 56:13-57:11 (Beck Decl., Exh. 8). Plaintiffs' counsel insisted that Ms. Stepanyan could only be asked how Vahram was earning money, while instructing her not to answer questions directed at finding out whether her claims were supported by evidence, whether she had actually lost financial support, and if so how much. *See* Anait Stepanyan dep. tr., 60:3-20 (Beck Decl., Exh. 8). The instructions were all improper. "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion

1  under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2); *see also McCoy v. City of Vallejo*, 2022
2  WL 4472881, *3 (E.D. Cal. Sept. 26, 2022) (Rule 30(c)(2) "provides the exclusive
3  grounds for instructing a deponent not to answer" (citing *Covington v. Curtis*, 2013 U.S.
4  Dist. LEXIS 53406, at *6 (C.D. Cal. Apr. 12, 2013)).

5      A defendant is not required to wait and see how plaintiffs might try to prove
6  damages claims at trial; defendants are entitled to take discovery testing or disproving
7  the veracity of damages claims. Insofar as Plaintiffs' counsel barred Ms. Stepanyan from
8  answering deposition questions testing her claims of lost financial support, their
9  supporting or controverting evidence, and how they related to Plaintiffs' putative loss of
10  financial support from the decedent (the only economic damages that could be
11  recoverable for a wrongful death claim,[3]) that obstruction aggravated the Plaintiffs'
12  failure to disclose admissible damages calculations and supporting documentation.

13  **E.    The Unsupported Estimates By Kirakos and Kadzhik Kesablyan That**
14  **They Lost Business Income Due to Mourning Vahram's Death.**

15      Plaintiffs Kirakos and Kadzhik Kesablyan asserted in their own supplemental
16  interrogatory responses that their grief caused them to lose "business" that they
17  estimated at "$300,000 per year." While Defendant does not contest that Kirakos and
18  Kadzhik mourned their father's death, wrongful death plaintiffs are barred under
19  California law from recovering monetary compensation for their grief or sorrow. *See*
20  CACI 3921 (Wrongful Death); *Krouse v. Graham*, 19 Cal. 3d 59 (1977). They are
21  limited to loss of financial support from the decedent—which they did not quantify.

22      But even if they could recover for their grief, Plaintiffs disclosed no calculations
23  of lost business profits putatively caused by that grief, or the basis of such calculations.
24  Estimating that they lost "approximately $300,000.00 or more per year for the past 4
25  years since the incident due to loss of business due to mourning" is not an admissible
26  calculation of financial loss putatively caused by the death. Nor did Plaintiffs produce
27  any documents from which alleged negative business impact could be assessed. Instead,

28  _____
[3]    *See* BAJI 14.50 (Measure of Damages-Death of Adult); CACI 3921.

14

they only produced tax returns for the years 2019-2021 for two businesses ("On Time Towing and Impound Yard" and "LA Luxury Rides"), while producing no records for years prior to January 8, 2018—despite Magistrate Judge Abrams' Order.[4]

## V.    ARGUMENT

### A.    Plaintiffs Did Not Disclose Any Admissible Calculation of Their Claimed Economic Damages, The Basis For Such Calculations, Or Any Substantiating Documents.

Plaintiffs' initial disclosures, as amended, stated only that Plaintiffs would later provide expert calculations of their damages. *See* Beck Decl., Exh. 1. Plaintiffs never disclosed any such expert calculations in compliance with Fed. R. Civ. P. 26(a), however. *See id.*, ¶¶ 2-3. Accordingly, Plaintiffs are barred from introducing any testimony or evidence asserting claims for economic damages. This sanction is automatic under Fed. R. Civ. P. 37(c)(1). *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also In re Banner Bank*, 8:20-cv-02304-JLS-JDE, 2022 WL 17080198, *4-5 (C.D. Cal. July 12, 2022) (granting request to exclude evidence of alleged economic damages where calculations were disclosed late).

Plaintiffs knew they had not produced admissible calculations of economic loss. Anait Stepanyan's supplemental interrogatory responses first objected that this subject required expert testimony, followed by stating that Vahram had told her he made "anywhere from $600,000.00 per year to $1,500,000.00 per year. These amounts were calculated using estimates based on what decedent informed Plaintiff he made." Beck Decl., Exh. 2. Those numbers did not purport to be a calculation of a *financial loss*

---

[4]    These businesses appear to have publicity problems that could explain the asserted disappointment. The "On Time Towing and Impound Yard" business currently has a 2 out of 5 star rating on Yelp, with myriad consumers leaving complaints that the business is a scam and fraud. *See* https://www.yelp.com/biz/on-time-towing-and-impound-yard-los-angeles. The "LA Luxury Rides" business is the business that Kirakos was threatening his business partner to force him to invest in, leading to the warrant operation for his arrest. Because Plaintiffs never disclosed any calculations or documentation showing alleged lost profits for either business, however, the point is academic.

putatively suffered by Ms. Stepanyan, however, or even a lost profits calculation, but rather to only be estimates of Vahram's hearsay claims about his gross business income, without deducting any costs. The time period for those estimates was also left unspecified. And Ms. Stepanyan failed to substantiate her claim by producing any financial documentation or other relevant evidence.

Moreover, Plaintiffs' failure to disclose was aggravated by their extraordinary obstruction of the Defendant's discovery into their damages claims. Despite being ordered by Magistrate Judge Abrams [Dkt. 63] to produce all responsive documents and supplemental interrogatory responses by August 10, 2022, Plaintiffs did not produce a single document substantiating claims of alleged loss of financial support from Vahram Stepanyan. That would have been impossible, because the State of California suspended Vahram's contractor's license in 2012 and revoked it permanently in 2013. Worse, Plaintiffs' counsel improperly instructed Ms. Stepanyan not to answer basic deposition questions inquiring about where Vahram's alleged business income had gone, and how it had allegedly supported Ms. Stepanyan.

Accordingly, Plaintiffs are barred from seeking to recover for any alleged financial loss from Vahram's death at trial, apart from the funeral costs that they timely provided receipts for in their document production.

In their supplemental interrogatory responses, Plaintiffs Kirakos Kesablyan and Kadzhik Kesablyan attempted a somewhat different theory of economic loss than Ms. Stepanyan had, claiming they had lost business due to mourning their father's death. Both asserted that they had "lost approximately $300,000.00 or more per year for the past 4 years since the incident due to loss of business due to mourning. Exact amounts to be determined by experts. Discovery is ongoing and Plaintiff reserves the right to supplement this response." Beck Decl., Exhs. 3, 4 (response to interrogatory no. 8). Plaintiffs never disclosed any such expert calculations, however, and they did not supplement this response with documents showing the alleged loss.

As discussed above, wrongful death plaintiffs may not recover damages for grief.

16

*See* BAJI 14.50 (Measure of Damages-Death of Adult); CACI 3921; *Krouse v. Graham*, 19 Cal. 3d 59 (1977). Rather they are limited to seeking to recover loss of financial support. *Id.* But even if damages from grief/mourning could be sought, the $300,000 number in Kadzhik and Kirakos' supplemental interrogatory responses was just an inadmissible guess at speculative business income. The interrogatory responses did not identify anything about what the estimate was supposed to represent, or even what business it applied to. Plaintiffs did not disclose any specific damages calculation, did not explain its basis, and did not produce any substantiating documentation.

Proving that a business would have made more money if not for a wrongful act normally requires expert testimony that centers on determining lost profits relative to an established baseline, not merely speculatively estimating lost income. In California, a plaintiff's recovery "may include loss of anticipated profits" if its "established business has been injured." *Fibreboard Paper Prod. Corp. v. E. Bay Union of Machinists, Local 1304, United Steelworkers of Am., AFL-CIO*, 227 Cal. App. 2d 675, 702 (1964). Such "damages are based on net profits, as opposed to gross revenue." *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014) (citation omitted). "'Net profits are the gains made from sales 'after deducting the value of the labor, materials, rents, and all expenses, together with the interest of the capital employed.'" *Parlour Enterprises, Inc. v. Kirin Group, Inc.*, 152 Cal. App. 4th 281, 287 (2007) (citations omitted). The net lost profits of "an established business may be recovered if their *extent* and *occurrence* can be ascertained with reasonable certainty." *Orozco v. WPV San Jose, LLC*, 36 Cal. App. 5th 375, 398 (2019) (emphasis added).

While lay plaintiffs can sometimes testify about extremely simple economic loss—like lost wages from a salaried position—non-experts cannot reliably calculate lost profits from speculative business operations, particularly when they have failed to prove a baseline of pre-incident profits. Here, Plaintiffs' "estimate" did not purport to be a lost profits calculation, and they never explained its basis. Nor did Plaintiffs produce any documentary evidence substantiating it. Moreover, in cases where courts have allowed

corporate executives use business records to perform damages calculations, "those cases generally involve straightforward arithmetic applied to calculate damages." *Joshua David Mellberg, LLC v. Will*, 386 F. Supp. 3d 1098, 1107-1108 (D. Az. 2019). By contrast, "Courts do not permit lay witness testimony when that testimony involves the use of a sophisticated damages calculation." *Id.* Here, Plaintiffs never disclosed any such calculation of economic loss, but even if they had, lay witnesses could not testify as to such calculations.

### B. Plaintiffs Were Not Substantially Justified In Failing To Disclose Admissible Economic Damages Calculations And Supporting Documentation

Rule 37(c)(1) bars Plaintiffs from pursuing claims of economic damages allegedly caused by Vahram's death (apart from their funeral costs), because they did not disclose such claims in compliance with Rule 26(a). Plaintiffs' failure to properly disclose any economic damages claims and related documentation apart from their funeral costs was (1) highly prejudicial to the Defendant and (2) aggravated by Plaintiffs' willful and repeated discovery obstruction in this lawsuit. Moreover, Plaintiffs knew that their claims of financial loss required timely disclosure of expert damages calculations and supporting documentation, because their initial disclosures and written discovery responses promised to produce such calculations and documentation, but they never did. Far from being "substantially justified", Plaintiffs' conduct rises to willfulness that would warrant dismissal of their entire lawsuit. Nonetheless, Defendant seeks with this motion only to exclude their claims of economic damages.

Plaintiffs may argue that the Defendant should cross-examine their witnesses at trial on such issues, but that is not how Rule 26, Rule 37, and the discovery process work. When plaintiffs fail to properly disclose damages calculations, they may not present them, period. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This is "a self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Id.* Plaintiffs cannot fail to disclose the basis for

their economic damages claims, improperly obstruct discovery on the subject, fail to produce any supporting or related documentation, and then ask the Defendant to try to counter wildly speculative damages claims that are asserted at trial by lay witnesses. The Federal Rules bar plaintiffs from sabotaging the defense in that manner.

Even worse would be if the Plaintiffs introduce some as-yet-unknown numbers or theories at trial—which the United States, as the Defendant, was never given adequate opportunity to address, test, and rebut in the discovery process. As illustrated above, taking discovery on economic damages claims in order to develop a proper defense is a complex process. It takes a great deal of time and work, often including third-party discovery and extended motion practice. That process is protracted further and made more difficult where (as here) the plaintiffs obstruct discovery, hoping to present unsubstantiated damages numbers at trial in order to make an inflated impact on the fact finder. Federal Rules 26(a) and 37(c)(1) bar that tactic.

Finally, allowing Plaintiffs to present evidence and testimony on this subject would unfairly waste trial time, distract the proceedings, and consume the Defendant's resources (and those of third-parties and the Court) in presenting its case. For example, Defendant would need to present extended testimony and medical records from Dr. Stephen Forman confirming Vahram Kesablyan's physical condition and his retired state from 2016-2017, as well as Dr. Forman's conversations with family members, including Plaintiff Anait Stepanyan, on those subjects before Vahram's death on January 8, 2018. As a busy oncologist, Dr. Forman's time would be wasted testifying at trial on this subject, rather than treating his patients for cancer. Defendant would also be forced to prepare cross-examinations on the subject, and introduce various exhibits. The Defendant should not be forced to defend improperly disclosed economic damages claims in this manner, and under Rule 37(c)(1) it is not required to.

# VI.   CONCLUSION

The United States respectfully requests that the Court grant this motion and issue an order precluding Plaintiffs from seeking economic damages at trial apart from their claimed $28,200 in funeral costs.

Date: July 31, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section

   /s/  *Daniel A. Beck*

DANIEL A. BECK
Assistant United States Attorney

Attorneys for Defendant
The United States of America

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2</u>

The undersigned, counsel of record for the United States, certifies that the memorandum of points and authorities contains 6,590 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 31, 2023

_/s/ Daniel A. Beck_
DANIEL A. BECK
Assistant United States Attorney